IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUDY STANKO, | : |
| | : |
| Petitioner | : |
| | : CIVIL NO. 4:09-CV-1911 |
| | : |
| v. | : Hon. John E. Jones III |
| | : |
| WARDEN DAVID EBBERT, | : |
| | : |
| Respondent | : |

## MEMORANDUM

April 18, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On October 5, 2009, Petitioner Rudy Stanko ("Petitioner" or "Stanko"), an inmate presently confined at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"), initiated the instant *pro se* action by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. At the time of filing, Stanko was an inmate at the Federal Correctional Institution Allenwood ("FCI Allenwood") in White Deer, Pennsylvania.

On December 8, 2009, the Honorable James F. McClure, Junior, to whom this case then was assigned, summarily dismissed the Petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts without prejudice

to Stanko's ability to pursue his claims seeking relief based upon allegedly unconstitutional conditions of confinement in a properly filed civil rights action. (Doc. 4.)  Stanko appealed, and in an opinion filed on September 21, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of Stanko's challenge to the conditions of his confinement, but vacated the December 8, 2009 Order to the extent that it dismissed Stanko's claims that sounded in habeas.  (*See* Doc. 9-1.)  Specifically, the Third Circuit Court of Appeals held that the Court should have considered Stanko's challenge to the validity of disciplinary proceedings that occurred on February 12, 2009 while he was in the custody of the Federal Bureau of Prisons ("BOP") at an unspecified institution that resulted in a sanction of an additional twenty-seven (27) days in jail, and therefore, remanded the case for further proceedings consistent with its Opinion.  (*See id.*)  The Opinion was docketed in this Court on November 9, 2010 (Doc. 8), and was followed by the entry of a Mandate on November 12, 2010 (Doc. 9).

By Order dated November 15, 2010, President Barack Obama was dismissed as a respondent to this action, leaving Warden Ebbert as the sole Respondent, service of the Petition was directed, and Respondent was directed within twenty-one (21) days to file an answer solely addressing Petitioner's challenge in his petition to the validity of BOP disciplinary proceedings that occurred on February 12, 2009 that resulted in a

sanction of an additional twenty-seven (27) days in jail.  (Doc. 10.)  On December 3, 2010, Respondent filed a Response (Doc. 11) and supporting exhibits[1] (Doc. 11-2). On December 17, 2010, Stanko filed a Motion requesting a ten (10) day extension of time to file a Reply.  (Doc. 12.)  On December 22, 2010, following Judge McClure's death, this case was re-assigned to this Member of the Court.  Thereafter, on December 28, 2010, Stanko filed his Reply.  (Doc. 13.)  By Order dated December 29, 2010, we granted *nunc pro tunc* Stanko's Motion requesting an extension of time to file his reply brief, and thus we deemed his Reply to be timely filed.  Accordingly, the Petition is fully briefed and ripe for disposition.  For the reasons set forth herein, the Petition will be denied.

## I.     FACTUAL BACKGROUND

On August 3, 2006, Stanko was sentenced by the United States District Court for the District of Nebraska to a seventy-two (72) month term of imprisonment for felon in possession of a firearm.  (Doc. 11-1 at 8, Stanko's Public Information Data and Inmate History.)  As of December 1, 2010, his projected release date was August 28, 2011, via good conduct time release.  (*Id.*)  Stanko was admitted to BOP custody

---

[1] Respondent submitted the Declaration (Doc. 11-1 at 3-5) of Joseph McCluskey, a Senior Attorney at the Federal Correctional Complex in Allenwood, Pennsylvania.  Attached to McCluskey's Declaration are the following: Stanko's Public Information Data and Inmate History (Doc. 11-1 at 7-18); Incident Report #1829701 (Doc. 11-1 at 20-26); Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the DHO (Doc. 11-1 at 28-29); DHO Report (Doc. 11-1 at 31-32); and Administrative Remedies 530410-R1 and -A1 (Doc. 11-1 at 34-38).

on September 18, 2006 and designated to FCI Allenwood on July 27, 2009.  (*Id.* at 14-15.[2])  He was designated to the FCI in Englewood, Colorado, ("FCI Englewood") from October 16, 2008 through February 13, 2009.  (*Id.* at 14.)

On February 4, 2009, while Stanko was confined at FCI Englewood, he was issued Incident Report No. 1829781, which charged him with interfering with staff in the performance of their duties.  (Doc. 11-1 at 20, Incident Report #1829781.)  The incident report was delivered to Stanko that same day.  (*Id.*, Boxes 14-16.)  The report states, that on February 4, 2009, at approximately 10:00 a.m., the Special Investigative Services Office ("SIS") completed an investigation which concluded that Stanko made threats against several BOP employees by submitting documents to his unit team that indicated he would file liens against these BOP staff members.  (*Id.*, Box 11.)  The incident specifically was described as follows:

> On 12-10-08, Stanko submitted several documents to his unit team which listed complaints and issued threats to file liens against the Education Supervisor, two Lieutenants and the Warden for the performance of their duties.  The documents stated in part: 'A fine of no less than $5,000 for each civil rights violation as codified at 18 USC . . . If not prosecuted or rebutted point for point categorically within three months, the surety shall be a lien on all property and rights to property of the Defendant, severally and jointly, which includes all official performance bonds and home owners insurance policies, and the unpaid balance will be payable to the Federal Bureau of Prisons from the US

---

[2]Citations to page numbers of documents filed on the docket in this action are to the numbers generated by the CM/ECF Filing System.

Treasury.'

(*Id.*)  The description of the incident also notes that the documents were fraudulently notarized by another inmate.  (*Id.*)  Copies of the documents are attached to the Incident Report.  (Doc. 11-1 at 21-26.)

In addition, SIS's investigation revealed that Stanko filed additional documents containing lien threats against a unit manger, the warden, the associate warden, the facilities assistant, the inmate systems manager at the FCI in Waseca, Minnesota ("FCI Waseca"), the regional director, a lieutenant, and six (6) unnamed bus drivers for the performance of their duties.  (Doc. 11-1 at 20, Box 11.)  As stated in the incident report, the filing of fraudulent Uniform Commercial Code ("UCC") redemptive process documentation by inmates is a means of harassing and intimidating federal employees and an attempt to prevent them from performing their duties.  (*Id.*)  The incident report also states that the SIS found that Stanko's actions were an attempt to extort money from these individuals and is a federal crime.  (*Id.*)

On February 5, 2009, the Unit Disciplinary Committee ("UDC") reviewed the charges against Stanko.  (Doc. 11-1 at 20, Incident Report, Part II- Committee Action.)  The UDC referred the charges to the Disciplinary Hearing Officer ("DHO") because of the severity of the charges and sanctions that were unavailable to the UDC. (*Id.*, Box. 19.)

5

On February 5, 2009, Stanko was advised that a hearing would be held before the DHO at a date and time to be determined. (*Id.* at 20 § II; Doc. 11-1 at 28, Notice of Discipline Hearing.) Also on February 5, 2009, Stanko was advised of his rights before the DHO. (Doc. 11-1 at 29, Inmate Rights at Discipline Hearing.) Stanko refused to sign the documents advising him of the hearing and of his rights at the hearing. (*See id.* at 28-29.)

At the DHO hearing on February 12, 2009, Stanko was in attendance and denied the charges, but stated he felt he had the right to file the sureties and that, "The money is not mine, it is going to the BOP. I have never filed a UCC, this is not a UCC, I do not have a UCC account." (Doc. 11-1 at 31, Discipline Hearing Officer Report, § III B.) According to his report, the DHO considered all available evidence, including the reporting staff member's incident report. (*Id.* § III. D.) The DHO also considered that Stanko admitted culpability during the hearing in making the statement "I have the right to file these with surety"; a copy of the documents containing the lien threats; the statements of the witnesses that Stanko requested; and the fact that the staff member is considered more credible in that he is morally and legally obligated to submit truthful statements and would not stand to gain by doing otherwise. (*Id.* at 32 § V.)

Stanko was found to have committed the prohibited acts. (*Id.* at 31 § IV.) The

DHO sanctioned him to a disallowance of twenty-seven (27) days of good conduct time; thirty (30) days of disciplinary segregation; twelve (12) months loss of commissary; six (6) months loss of telephone privileges; and six (6) months loss of visitation.  (*Id.* at 32 § VI.)

## II.   DISCUSSION

Stanko alleges that his constitutional rights were violated in the disciplinary proceedings that were conducted as to Incident Report No. 1829701 and by the sanctions that were imposed, including the loss of twenty-seven (27) days of good conduct time, and requests that we expunge the incident report and restore the twenty-seven (27) days of good conduct time.  (*See* Doc. 1, Petition; Doc. 13, Reply.)  Because the sanctions imposed included the revocation of good conduct time, and thus the disciplinary hearing impacted the duration of Stanko's confinement, his claim is properly before this Court in the context of a Petition filed under 28 U.S.C. § 2241.

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Federal inmates possess a liberty interest in good conduct time.  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).  When a prison disciplinary

7

hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive the following due process protections: (**1**) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (**2**) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; (**3**) aid in presenting a defense if the inmate is illiterate; (**4**) an impartial tribunal; and (**5**) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff,* 418 U.S. at 564.

In the instant case, although Stanko claims that BOP staff did not comply with the requirement that they provide him with twenty-four (24) hours notice of his hearing (*see* Doc. 13, Reply, at 2 ¶ 5 c), the record shows that Stanko was served with the incident report on the date it was prepared, February 5, 2009 (*see* Doc. 11-1 at 20, 28), and that his hearing occurred on February 12, 2009 (*see* Doc. 11-1 at 31), and therefore, he clearly received more than twenty-four (24) hours notice of the charges against him.

The record also shows the following:

On February 5, 2009, Stanko was provided with notice of his rights to have a full-time member of the staff represent him at the DHO hearing (*see* Doc. 11-1 at 29), and he in fact was represented at the hearing by R. Tabor, CMC (*see* Doc. 11-1 at 31 §

8

II).

Stanko also was advised on February 5, 2009 of his right to call witnesses and to present documentary evidence in his behalf (*see* Doc. 11-1 at 28), and, at the DHO hearing, he chose not to present any documentary evidence (*see id.* at 32 V), and he exercised his right to call witnesses, and the DHO stated in his report that he relied on the statement of Stanko's requested witness, the inmate who notarized Stanko's signature on the documents that formed the basis of the charges, in support of his finding that Stanko had committed the prohibited acts (*see id.*).

Also on February 5, 2009, Stanko was advised of his right to present a statement or to remain silent, as well as his right to be present throughout the hearing (*see* Doc. 11-1 at 28), and the record shows that he was present at the hearing with his staff representative and that he chose to make the following statement: "I believe we are dealing with two issues of the document. The first, assurity [*sic*], and the second Peterson's notary. I feel I have the right to file this with surety. The money is not mine, it is going to the BOP. I have never filed a UCC, this is not a UCC, I do not have a UCC account." (*see id.* at 31 § III B).

Finally, the record shows that, on February 5, 2009, Stanko was advised of his right to be advised of the DHO's decision and the facts supporting that decision, as well as the right to appeal the DHO's decision (*see* Doc. 11-1 at 29), and that he was

9

advised of the DHO's decision and again informed of his appeal rights upon his receipt of the DHO's report, which was signed by the DHO on March 24, 2009 (*see id.* at 32). The record shows that Stanko filed appeals to the Regional and Central Offices of the BOP as required by 28 C.F.R. § 542.15(a). (*See* Doc. 11-1 at 34-38.)

In his Reply, Stanko alleges that his right to due process was violated because the DHO's decision finding that he had committed the prohibited acts "was not based on the greater weight of evidence." (*See* Doc. 13 at 2 ¶ 5 a.) Where the due process requirements of *Wolff* are met, as is the case here, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985); *see also Young,* 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455. Under *Hill,* judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.17(f)

(requiring that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be based on the greater weight of the evidence).

In the instant case, the DHO did not rely solely on the incident report in reaching his finding that Stanko had committed the prohibited acts. Rather, the DHO's findings also were supported by the documents that formed the basis for the charges and Stanko's witness's statement. Significantly, the DHO also based his findings on Stanko's own admission of guilt during the hearing through his statement, "I have the right to file these with surety." Finally, the DHO also relied upon the consideration that the staff member is more credible in that he is morally and legally obligated to submit truthful statements and would not stand to gain by doing otherwise. Based upon these items of evidence cited by the DHO, and in particular, Stanko's own admission of guilt at the hearing, we conclude that there was "some evidence" to support the DHO's decision.

Moreover, we conclude that the sanctions imposed, namely disallowance of twenty-seven (27) days of good conduct time, thirty (30) days of disciplinary segregation, and the loss of privileges, were consistent with BOP policy regarding sanctions available for 200-level offenses, and thus were not excessive. *See* 28 C.F.R. § 541.13, Tables 3 and 4. As a result, we find that Stanko's claim that his constitutional rights were violated by the disciplinary proceedings and sanctions

11

imposed is without merit, and we therefore will deny his request to expunge the incident report and to restore his twenty-seven (27) days of good conduct time.

## III.    CONCLUSION

Because Stanko was afforded all of the due process protections required by *Wolff* and there was "some evidence" to support the DHO's findings, Stanko is not entitled to habeas relief, and the Petition will be denied. An appropriate Order will enter on today's date.